**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**PATRICIA ANNE BLAKE,**

                Plaintiff,

**v.**

**KILOLO KIJAKAZI,
Commissioner of Social Security,**

                Defendant.

**CIVIL ACTION NO.: 1:21-CV-54
(KLEEH)**

## <u>REPORT AND RECOMMENDATION</u>

### I.   <u>INTRODUCTION</u>

This case arises from the denial of Plaintiff Patricia Anne Blake's Title II

application for a period of disability and disability insurance benefits ("DIB"). After

Plaintiff's application proceeded through the administrative process, the Appeals

Council of the Social Security Administration ("SSA") issued Defendant Commissioner

Kilolo Kijakazi's ("the Commissioner") final decision and concluded that Plaintiff was not

disabled within the meaning of the Social Security Act for purposes of DIB. However,

the Appeals Council found that Plaintiff was disabled for purposes of her Title XVI

supplemental security income ("SSI") application. Now, Plaintiff seeks judicial review of

the Commissioner's decision to deny DIB. Because the Commissioner's final decision to

deny Plaintiff's claim for DIB contains no legal error and is supported by substantial

evidence, the undersigned reports and recommends that Plaintiff's Motion [ECF No. 13]

for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment

[ECF No. 17] be **GRANTED**.

### A.      Procedural History

On July 18, 2013, Plaintiff applied for DIB and SSI, alleging disability as of June 28, 2013. R. 437. After her applications were denied at the initial and reconsideration levels of administrative review and after a hearing, Administrative Law Judge ("ALJ") Mark O'Hara issued a decision on January 20, 2016, finding that Plaintiff was not disabled. R. 437-48. The Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ on May 11, 2017. R. 455-57. On July 27, 2018, Plaintiff, a vocational expert, and two medical experts appeared and testified before the ALJ. R. 269-319. Following the administrative hearing, the ALJ issued a partially favorable decision on December 12, 2018. R. 247-61. The Appeals Council reviewed the ALJ's December 2018 decision and issued its own partially favorable decision on September 25, 2020, making it the final ruling of the Commissioner. R. 6-8, 13-18.

In its decision, the Appeals Council granted Plaintiff's SSI application as of July 18, 2013, but denied Plaintiff's application for DIB. R. 13-18. The Appeals Council adopted the ALJ's step four finding that Ms. Blake was not disabled for DIB purposes because she could have performed her past relevant work from 1999 as a cashier-checker, which dates back fifteen years prior to September 30, 2014, Plaintiff's date last insured ("DLI"). Id. However, the Appeals Council found that Plaintiff was disabled for the purposes of her SSI claim as of July 18, 2013 because she had no past relevant work that she could perform dating back fifteen years from the adjudication date of December 12, 2018.[1] Id.

---

[1] Also essential to the Appeals Council's SSI disability determination was its step five finding that no other jobs existed in significant numbers in the national economy that Plaintiff could perform. R. 16.

On April 23, 2021, Plaintiff, through her counsel, Robert W. Gillikin, II, Esq., filed a Complaint [ECF No. 1] in this Court to obtain judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The Commissioner, through counsel Maximillian Nogay, Assistant United States Attorney, filed an Answer [ECF No. 8] and the Administrative Record [ECF No. 9] of the proceedings on September 2, 2021. Plaintiff and the Commissioner then filed Motions for Summary Judgment [ECF Nos. 13, 17] along with supporting briefs [ECF Nos. 14, 18]. Plaintiff then filed a reply brief [ECF No. 19].[2] On January 7, 2022, the Commissioner filed a notice of supplemental authorities. See ECF No. 22. Oral argument was held on January 12, 2022.

The matter is now ripe before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions, corresponding briefs, and the administrative record, the undersigned now issues the following Report and Recommendation.

**B.    Personal History**

Plaintiff was born on August 29, 1952 and was sixty-two years old on her date last insured for DIB, September 30, 2014. R. 14, 42, 276. As of her 2015 administrative hearing, Plaintiff was 5'0" and weighed approximately 176 pounds. R. 341. She graduated from high school and completed one year of college. R. 276. Her employment history includes work as a cashier and deli clerk. R. 312, 350-51, 695, 720. Earning records from 1999, fifteen years prior to Plaintiff's DLI, showed that she earned

---

[2] Per the Local Rules of Civil Procedure, briefs for social security appeals shall not exceed a total of fifteen pages, except as approved by the Court upon motion. LR Civ P 9.02(e). Plaintiff's reply brief exceeded the page limit without seeking an extension from the Court. Nevertheless, the Court considered Plaintiff's reply in its entirety and the arguments contained therein.

$8,980.38 as a grocery store cashier, which is an average monthly income of $748.36.

R. 664. The only other time Plaintiff appeared to have reached substantial gainful

activity levels during the relevant period was in June and July of 2011 as a deli clerk

where Plaintiff earned an approximate monthly income of $998.40. R. 15, 695, 720. This

two-month period in 2011 was also the last time Plaintiff was employed. R. 695, 720.

Plaintiff has alleged disability beginning June 28, 2013, due to degenerative disc

disease, migraines, irritable bowel syndrome, chronic obstructive pulmonary disease,

depression, anxiety, panic attacks, and carpal tunnel syndrome. R. 248, 693.

### C.    Medical History

In accordance with the Order Directing Filing of Briefs [ECF No. 10], the parties

were required to produce a stipulation of facts to provide the Court with a chronology in

narrative form of Plaintiff's relevant medical history. However, due to the nature of the

issues raised on appeal, the parties omitted a detailed summation of Plaintiff's medical

history as it was not relevant.

## II.    THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following

criteria:

> [The] individual . . . [must have a] physical or mental impairment or
> impairments . . . of such severity that he is not only unable to do his previous
> work but cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work. . . . '[W]ork which exists in
> the national economy' means work which exists in significant numbers
> either in the region where such individual lives or in several regions of the
> country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The SSA uses the following five-step

sequential evaluation process to determine whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement [of twelve months] . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a

listed impairment, we will assess and make a finding about your residual functional

capacity ("RFC") based on all the relevant medical and other evidence in your case

record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920(e).

> (iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the

claimant to prove that he or she is disabled and that, as a result of the disability, he or

she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d

802, 804 (4th Cir. 1978). Once the claimant so proves, the burden of proof shifts to the

Commissioner at step five to demonstrate that jobs exist in the national economy that

the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If the claimant is determined disabled or not disabled during any of the five steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

### III.  SCOPE OF REVIEW

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). However, the court does not "reflexively rubber-stamp an ALJ's findings." Lewis v. Berryhill, 858 F.3d 858, 870 (4th Cir. 2017).

## IV.    CONTENTIONS OF THE PARTIES

### A.    Whether SSA may find Plaintiff disabled for SSI purposes and not disabled for DIB.

Plaintiff claims it is legal error for the Appeals Council to find that she is only disabled for SSI purposes and not disabled for DIB purposes when they are subject to the same legal standard and analysis. ECF No. 14 at 4. Specifically, Plaintiff is perplexed as to how the Appeals Council could find disability as of July 18, 2013 for SSI, and then find that Plaintiff was not disabled for DIB purposes before her DLI, September 30, 2014, leaving that near year-long period between 2013 and 2014 where Plaintiff is simultaneously both disabled and not disabled. Id.

The Commissioner notes that these divergent disability findings are easily explained by the different rules applicable in SSI and DIB claims when calculating past relevant work. ECF No. 18 at 6. Moreover, the Commissioner argues that the Appeals Council applied the correct rules and that the respective DIB and SSI determinations were made without error. Id. at 6-7.

### B.    Whether the Appeals Council erred in finding that Plaintiff could perform her past relevant work as a cashier-checker.

Plaintiff argues the Appeals Council made four errors in finding that she could perform her past relevant work as a cashier-checker prior to her DLI. ECF No. 14 at 5-6.

First, Plaintiff argues that the Appeals Council erred in finding her work as a cashier-checker in 1999 qualified as substantial gainful activity. Id. Second, Plaintiff argues the Appeals Council erred in failing to specify whether she could perform her past relevant work as it was actually performed or as it was generally performed. Id. at 6-7. Third, Plaintiff argues the Appeals Council was legally prohibited from finding that

she could perform her past relevant work as it is generally performed because her prior

work was a composite job. Id. at 7-8. Fourth, Plaintiff argues that the Appeals Council

was also prohibited from finding that she could have performed her past relevant work

as it was actually performed. Id. at 8-9.

The Commissioner specifically addresses each assignment of error in her

response and argues there is no merit to Plaintiff's criticisms of the Appeals Council

findings. ECF No. 18 at 7-10.

**C.     Whether the ALJ erred in weighing the medical opinion evidence of record.**

Plaintiff argues that the ALJ erred by (1) finding the older opinions of two state

agency reviewing physicians more persuasive than that of the more recent opinion of

the testifying medical expert, Dr. Levine, and (2) by substituting his lay judgment for the

opinion of the testifying medical expert. ECF No. 14 at 9-11.

In the Commissioner's response, she argues that substantial evidence supports

the ALJ's evaluation of the medical opinions and that the ALJ did not substitute "his lay

judgment" for the medical sources of record. ECF No. 18 at 10-12.

**D.     Whether the alleged unconstitutionality of § 902(a)(3)'s removal provision requires remand of the Appeals Council decision.**

Plaintiff argues that former Commissioner Andrew Saul's unconstitutional tenure

protection deprived the ALJ and Appeals Council of the authority to adjudicate Plaintiff's

claim. ECF No. 14 at 12-14; ECF No. 19 at 5-19. Plaintiff contends this case must be

remanded because the structure for removing the SSA Commissioner under 41 U.S.C.

§ 902(a)(3) violates the separation of powers under Article II of the U.S. Constitution,

such that the Appeals Council decision to deny Plaintiff benefits was made by officials who had not properly been delegated authority to render such decisions. Id.

While the Commissioner concedes that § 902(a)(3) violates the separation of powers, the Commissioner contends, among other arguments, that the unconstitutional removal provision did not result in compensable harm to Plaintiff, and thus does not warrant remand. ECF No. 18 at 12-24.

## V.   DISCUSSION

### A.   The Appeals Council did not err when it found Plaintiff disabled for SSI purposes and not disabled for purposes of DIB.

Plaintiff argues that it was inconsistent for the Appeals Council to find that she was disabled as of July 18, 2013, for purposes of SSI, but not disabled as of that date for purposes of DIB. ECF No. 14 at 4. As the Commissioner accurately points out, there are different rules applicable in SSI and DIB claims when calculating past relevant work that in this case simply yielded divergent outcomes.

Past relevant work is work that was done within the last 15 years, lasted long enough for an individual to learn how to do it, and constituted substantial gainful activity. 20 C.F.R. §§ 404.1565(a), 416.965(a). Social Security Ruling ("SSR") 82-62 explains that in determining the relevant 15-year period for past relevant work in both Title XVI SSI claims and Title II DIB claims, the period is generally the 15 years prior to the date of adjudication at the initial, reconsideration or higher appellate level. SSR 82-62, 1982 WL 31386, at *2. However, in Title II DIB cases, if the claimant's disability insured status was last met prior to the date of adjudication (as is the case here), the past relevant work period is the 15 years prior to the claimant's date last insured. Id. at *1.

In this case, the date of adjudication is December 12, 2018,[3] and Plaintiff's DLI is September 30, 2014. Therefore, the Appeals Council correctly started its past relevant work calculation for SSI on December 12, 2018 and its past relevant work calculation for DIB on September 30, 2014. This four-year gap simply happened to be outcome determinative.

The years of 1999 and 2011 appear to be the only two years in the relevant time frame where Plaintiff qualified for substantial gainful activity, one of the three requirements needed to constitute past relevant work. R. 15. In 2011, Plaintiff worked as a deli clerk. R. 15, 695, 720. The Appeals Council concluded that this past relevant work as a deli clerk exceeded Plaintiff's residual functional capacity. R. 15. Thus, given Plaintiff had no past relevant work that she could perform in the 15 years prior to December 12, 2018, the Appeals Council found that Plaintiff was disabled for the purposes of her SSI claim as of July 18, 2013.[4] R. 13-18. However, Plaintiff's 1999 position as a grocery cashier-checker was within the 15-year timeframe using the DLI of September 30, 2014 for DIB purposes. Because the Appeals Council found that the 1999 position qualified as past relevant work for the DIB claim and found that she could

---

[3] The Commissioner, presumably by her interpretation of SSR 82-62, notes the time of adjudication as September 25, 2020, the date of the Appeals Council decision. ECF No. 18 at 6. The adjudication date, for purposes of past relevant work calculation, only applies to Plaintiff's SSI Title XVI claim in this case, of which Plaintiff has already received a favorable determination. Consequently, Plaintiff is only appealing the adverse DIB determination. Ultimately, the question of whether the Appeals Council should have used September 25, 2020 instead of December 12, 2018 as the date of adjudication makes no difference here as it is both unchallenged and harmless. Given Plaintiff was unemployed between December 12, 2018 and September 25, 2020, the Appeals Council's determination that Plaintiff had no past relevant work that she could perform within fifteen years of December 12, 2018 remains true if it instead went back fifteen years from September 25, 2020.

[4] Also essential to the Appeals Council's SSI disability determination was its step five finding that no other jobs existed in significant numbers in the national economy that Plaintiff could perform. R. 16.

have performed this past relevant work as a cashier-checker, her claim for DIB was denied, and she was designated as not disabled. R. 13-18.

In sum, there was no inconsistency or legal error in the Appeals Council's past relevant work findings. The Appeals Council correctly applied the past relevant work rules to Plaintiff's SSI and DIB claims and under these facts appropriately determined that Plaintiff was disabled for her SSI application and not disabled for her DIB application.

**B.   The Appeals Council did not err in its finding that Plaintiff could perform her past relevant work as a cashier-checker.**

Plaintiff contends that the Appeals Council made four legal errors in finding that she could perform her past relevant work as a cashier-checker. ECF No. 14 at 5-6. The Court will address each argument in turn.

**1.   The Appeals Council did not err in finding Plaintiff's work as a cashier-checker in 1999 qualified as substantial gainful activity.**

Substantial gainful activity is defined as work that "involves doing significant physical or mental activities" and is done "for pay or profit." 20 C.F.R. §§ 404.1572, 416.972. Work may qualify as substantial gainful activity even if it is done on a part-time basis. Id. For the second half of 1999, a non-blind individual is presumed to have performed substantial gainful activity if she earned more than $700 per month. See 20 C.F.R. §§ 404.1574, 416.974; Substantial Gainful Activity, Social Security Administration (Dec. 20, 2021), http://www.ssa.gov/oact/cola/sga.html. The regulations explain that SSA will average an individual's earnings when calculating whether substantial gainful activity has been performed over a given period of continuous work activity. See 20 C.F.R. §§ 404.1574, 416.974.

Here, the Appeals Council correctly found that Plaintiff's cashier-checker job was substantial gainful activity in 1999. Plaintiff reported that she worked as a cashier at a grocery store from 1994 to 2002. R. 720. Her yearly earnings report indicates that she earned $8,980.38 in 1999. R. 664. She earned similar amounts in 1998 ($8,809.14) and 2000 ($8,169.10). R. 664. Earnings queries appear to show that Plaintiff worked all four quarters in 1999. R. 679. Because there was no indication that there was a significant change in Plaintiff's work or earnings during the fourth quarter of 1999, the Appeals Council correctly averaged her yearly earnings, resulting in a calculation of $748.36 per month. R. 15. Based on this calculation, substantial evidence supports the Appeals Council's finding that Plaintiff's cashier-checker job was over the $700 per month substantial gainful activity threshold in the latter portion of 1999, and the Court finds no error in the Appeals Council's substantial gainful activity calculation.

### 2. The Appeals Council did not err for failing to explicitly state whether Plaintiff could perform her past relevant work as it was actually performed or as it is generally performed.

A claimant may be found not disabled at step four of the sequential evaluation process if she is able to perform her past relevant work either (1) as she actually performed it or (2) as it is generally performed in the national economy. SSR 82-61, 1982 WL 31387. Plaintiff argues the Appeals Council erred in failing to specify whether it was finding that Ms. Blake could perform her past relevant work as she actually performed it or as it is generally performed and that such an error deprives the Court of meaningful review. ECF No. 14 at 6-7.

The Appeals Council stated: "At step four of the sequential evaluation process for the claimant's application for [DIB], the Appeals Council agrees with the Administrative

Law Judge and finds the claimant is capable of performing past relevant work as a cashier-checker, and it was performed at substantial gainful activity levels in 1999." R. 15. In his decision, the ALJ explained that he found Plaintiff capable of performing her past relevant work as a cashier-checker both as it is generally performed and as it was actually performed. R. 259. The Court agrees with the Commissioner that it is evident from the Appeals Council decision that it adopted the ALJ's finding on this point even though it did not reiterate the ALJ's findings verbatim. See Danson v. Astrue, 2009 WL 2366295, at *2 (D. Md. July 30, 2009) (recognizing that ALJs can demonstrate how they arrived at their findings through incorporation by reference to a prior opinion). Thus, it is apparent to the Court that the Appeals Council likewise found Plaintiff capable of performing her past relevant work as a cashier-checker both as it is generally performed and as it was actually performed. As such, the Court finds no error.

### 3. The Appeals Council was not prohibited from finding that Plaintiff could perform her past relevant work as it is generally performed.

Plaintiff argues the Appeals Council was legally prohibited from finding that she could perform her past relevant work as it is generally performed because her prior work was a composite job. ECF No. 14 at 7-8.

"Composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT." SSR 82-61, 1982 WL 31387, at *2; POMS DI 25005.020(B), 2011 WL 4753471. If the main duties of past relevant work can be captured by a single DOT occupation, then the claimant likely has not performed a composite job. POMS DI 25005.020(B), 2011 WL 4753471. The SSA has clarified that an ALJ can deny a claim at step four where the claimant remains capable of performing a composite job "as actually performed," but an ALJ is not permitted to make an

13

adverse finding that the claimant remains capable of performing a composite job "as generally performed," given that a composite job does not have a DOT counterpart. Id.

From 1994 to 2002, Plaintiff worked at the Hawes Shop-N-Save grocery store as a cashier. R. 695, 720. The vocational expert at Plaintiff's 2015 hearing testified as follows: "The work that she did at the Family Dollar, and the Shop and Save, was a cashier, but they also had other duties. Normally, that is a cashier-checker" listed in DOT 211.492-014. R. 350. In other words, the vocational expert classified this 1999 job as a "cashier-checker," not a composite job. Plaintiff contends that because her job occasionally involved putting produce out on the floor in addition to her primary duties behind the checkout counter that this made her position a composite job. ECF No. 14 at 7-8; R. 345. However, in the DOT description of cashier-checker, one of the general responsibilities entails stocking shelves. See DOT 211.492-014, 1991 WL 671841. Thus, the main duties of Plaintiff's past relevant work in 1999 were indeed captured by a single DOT occupation, that of a cashier-checker, which is consistent with the testimony of the vocational expert, and indicative that Plaintiff did not perform a composite job. See POMS DI 25005.020(B), 2011 WL 4753471.

Given Plaintiff's prior work was not a composite job, the Appeals Council was permitted to find that she could perform this occupation as it is generally performed in the national economy. Furthermore, because Plaintiff's past relevant work as a cashier-checker did not exceed her residual functional capacity as it is generally performed, substantial evidence supports the Appeals Council's (and ALJ's) finding that she could perform this job as it is generally performed. Finally, even if this grocery store position did constitute a "composite job" that prohibited the ALJ and Appeals Council from

finding Plaintiff could perform it as generally performed, such an error would be harmless and not require remand because Plaintiff could perform the job as actually performed. See Emigh v. Comm'r of Soc. Sec., 2015 WL 545833, at *21 (N.D. W. Va. Feb. 10, 2015) ("The court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate non-disability determination.").

### 4. The Appeals Council was not prohibited from finding that Plaintiff could perform her past relevant work as actually performed.

Plaintiff argues her RFC is in conflict with how she actually performed her job in 1999 and that the ALJ erred in ignoring this conflicting evidence. ECF No. 14 at 8-9, ECF No. 19 at 3. First, the ALJ found in the RFC that Plaintiff could perform light work, which involves the lifting of no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. § 404.1567(b), 416.967(b); R. 15, 254-55. In Plaintiff's work history report, Plaintiff admitted that the heaviest weight she lifted for her 1999 cashier-checker job was 20 pounds and that she frequently lifted 10 pounds. R. 714, 721. Yet right above this admission on the same document, Plaintiff wrote that she lifted "50lb dog food bags." Id. When determining whether substantial evidence exists, courts must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653. The Court will not reweigh this conflicting evidence and defer to the Appeals Council's and ALJ's determination as to the weight Plaintiff was actually required to lift in her position as a cashier-checker.

Plaintiff also points out that she was required to retrieve shopping carts and was ultimately terminated from her position because she could no longer retrieve them. R.

344, 714. Lastly, Plaintiff contends that her job requirement of occasionally removing produce from the cooler to the prep table conflicts with the RFC, which states Plaintiff should "avoid concentrated exposure to temperature extremes." R. 15, 254-55, 714.

Relying primarily on the testimony of the vocational expert, the ALJ found that Plaintiff's work as a cashier-checker, as she actually performed it, "did not require the performance of work-related activities precluded by" Plaintiff's RFC. In so finding, the ALJ was not convinced that occasionally removing produce from a cooler to a prep table amounted to the level of "concentrated exposure to temperature extremes." Nor was he convinced that Plaintiff was physically unable to retrieve shopping carts, given the physical acts of walking and pushing carts are not of the sort precluded by the RFC. Indeed, the ALJ noted when considering Plaintiff's RFC that her daily activities, which includes shopping for groceries, suggest a greater level of physical and mental functioning than that alleged. R. 256. The Court finds that substantial evidence supports the Appeals Council's finding (and by extension the ALJ's finding) that Plaintiff's description of her past relevant work does not exceed her RFC and that accordingly Plaintiff could perform her past relevant work as a cashier-checker as she actually performed it. Moreover, contrary to Plaintiff's assertion, the Court finds no indication that the ALJ ignored evidence about her job requirements. Rather, the ALJ compared Plaintiff's RFC "with the physical and mental demands of her past work" and found no performance issue. See R. 259.

### C. The ALJ did not err in weighing the medical opinion evidence of record.

Plaintiff argues that the ALJ erred by (1) finding the older opinions of two state agency reviewing physicians more persuasive than that of the more recent opinion of

16

the testifying medical expert, Dr. Levine, and (2) by substituting his lay judgment for the opinion of the testifying medical expert.[5] ECF No. 14 at 9-11.

In assessing Plaintiff's application for benefits, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported by and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). In reaching the RFC determination, the ALJ considered the medical opinion evidence in accordance with 20 C.F.R. §§ 404.1527, 416.927. R. 257.

With respect to Plaintiff's physical impairments, the ALJ relied upon the 2013 opinion of Saima Noon, M.D., and the 2014 opinion of Thomas Lauderman, M.D., two state agency reviewing physicians. R. 258, 388-89, 412, 415-16. Plaintiff first argues that the ALJ erred in finding these "outdated" opinions of the two state agency physicians more persuasive than the more recent 2018 opinion of the testifying medical expert, Dr. Allan Dale Levine. R. 247, 258.

Generally, the ALJ should accord more weight to medical opinions of physicians who have treated or examined the claimant over those who have simply reviewed the medical record. 20 C.F.R. §§ 404.1527, 416.927. The cases Plaintiff cites to in her brief are distinguishable in that the issue here involves a conflict of opinion between non-treating sources, rather than a conflict of opinion between a treating source and a non-treating source.[6] A treating source is an acceptable medical source who provides the claimant, or has provided the claimant, with medical treatment or evaluation and who

---

[5] In its September 25, 2020 decision, the Appeals Council adopted the ALJ's finding regarding Plaintiffs' RFC and, therefore, adopted the ALJ's evaluation of the medical opinions. R. 15.

[6] See Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000); Jelinek v. Astrue, 662 F.3d 805, 812 (7th Cir. 2011); Smith v. Heckler, 735 F.2d 312, 316 (8th Cir. 1984); Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009).

has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1527, 416.927.

In this case, all three physicians at issue have simply reviewed the medical evidence and have not treated or examined Plaintiff. See R. 247, 253, 257-59, 296. Thus, the inquiry comes down to whether it was reasonable for the ALJ to weigh the opinions of two non-treating medical sources over that of a more recent non-treating medical source and whether the ALJ adequately explained his rationale for doing so.

The ALJ explained that he assigned more weight to the opinions of the state agency physicians because they were consistent with the overall record evidence, while Dr. Levine's opinion was not.[7] R. 257-58. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (stating that more weight will be given to medical opinions that are consistent with the record as a whole). The ALJ carefully considered Dr. Levine's testimony and explained that he also gave "greater weight" to the opinions of the reviewing state agency physicians because "those assessments were rendered closer to the date last insured than Dr. Levine's and the medical evidence does not reflect a significant change in the condition since the prior [2013] ALJ decision through the claimant's date last insured." R. 258. The ALJ emphasized that any evidence that had been received into the record after the state physicians made their determinations was not new or material such that it would alter the findings about the claimant's RFC through her DLI. R. 258. Because the ALJ considered the state agency opinions in conjunction with the later-submitted evidence, there was no error. Foran v. Astrue, 2012

---

[7] The ALJ found that Dr. Levine's opinion was "not consistent with the medical evidence of record, with limited objective findings and routine and conservative treatment." R. 258. The ALJ noted in explaining the inconsistency that, "[d]espite the claimant's surgical history and degenerative change in the lumbar and cervical spine, she has generally demonstrated a normal gait and normal strength and sensation." Id.

WL 4499070, at *11 (S.D.W.V. Sept. 28, 2012) (holding that the Commissioner could rely on the opinion of the state agency physician because the ALJ considered later-submitted evidence in conjunction with the state agency physician's opinion).

Plaintiff next argues that the ALJ erred by substituting his lay judgment for the opinion of the testifying medical expert. An ALJ may not substitute his lay judgment for that of the medical sources of record. See Nguyen v. Chater, 172 F.3d 31, 35-36 (1st Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998).

Here, the ALJ did not reject Dr. Levine's testimony based on his lay reading of the objective medical evidence of record. Rather, the ALJ appropriately exercised his role as the sole arbiter of Plaintiff's RFC and reasonably gave more weight to the opinions of the reviewing state agency physicians and prior ALJ findings because they were more consistent with the overall record evidence, just as the regulations command. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (the issue of RFC is an administrative finding, not a medical opinion, which the ALJ independently formulates based on the entire record). In short, the ALJ's evaluation of the medical opinion evidence was done without error and his decision, which was adopted by the Appeals Council, was supported by substantial evidence.

**D.  While the § 902(a)(3) removal provision violates separation of powers, it does not void the Appeals Council decision and does not necessitate remand in this case.**

Plaintiff argues remand is required because the § 902(a)(3) removal provision violates separation of powers rendering SSA's decision to deny her benefits invalid because it was rendered by officials without constitutionally delegated authority. ECF No. 14 at 12-14; ECF No. 19 at 5-19. Although Plaintiff expressly withdrew this

19

constitutional challenge on the record at oral argument, the Court will nevertheless address the issue as presented in the briefs. The Commissioner argues that the unconstitutional removal provision does not void the Appeals Council decision, does not result in harm to Plaintiff, and thus does not justify remand.[8] ECF No. 18 at 13-14, 16-19. For the reasons explained herein, the Court agrees with Plaintiff that the Commissioner enjoyed unconstitutional tenure protection but finds that the unconstitutional provision does not deprive the Commissioner of decision-making authority and did not result in any harm to Plaintiff that would require remand of the Appeals Council's decision.

### 1. The § 902(a)(3) removal provision is unconstitutional.

Grounds for removal of the Commissioner of Social Security are governed by 41 U.S.C. § 902(a)(3), which states that the Commissioner may only be removed from office pursuant to a finding by the President of "neglect of duty or malfeasance in office." Plaintiff argues (and the Commissioner concedes) that two recent Supreme Court cases, Seila Law v. Consumer Financial Protection Bureau, 140 S. Ct. 2183 (2020) and Collins v. Yellen, 141 S. Ct. 1761 (2021), mandate a finding that the removal clause in § 902 violates the Constitution's separation of powers.

In Seila Law, the Supreme Court held the Consumer Financial Protection Bureau's ("CFPB") removal structure under 12 U.S.C. § 5491(c)(3), which allowed the

---

[8] The ALJ and Appeals Council judges who decided Plaintiff's case were appointed by then-Acting Commissioner Nancy Berryhill. See SSR 19-1p, 2019 WL 1324866, at *2 (Mar. 15, 2019); ECF No. 18 at 14-16. Defendant contends Ms. Berryhill, as an *Acting* Commissioner, was removable *at will* and not subject to the same "for cause" removal provision as Mr. Saul. ECF No. 18 at 14-16. The Court need not reach this argument because, as explained below, Plaintiff cannot establish that the removal provision caused her harm. Furthermore, the Court need not and does not reach the Commissioner's additional arguments: Harmless Error, De Facto Officer Doctrine, Rule of Necessity, and Broad Prudential Considerations. See ECF No. 18 at 19-24.

CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," violated the separation of powers by insulating the director from removal by the President. 140 S. Ct. at 2192, 2197. The following year, the Supreme Court decided Collins. There, the Court held a provision, which limited the President to only removing the Federal Housing Finance Agency ("FHFA") director "for cause," violated the separation of powers. Collins, 141 S. Ct. at 1783.

The Court agrees with the parties that the § 902 removal provision violates separation of powers as it limits the President's authority to remove the Commissioner without cause. That said, the fact that the removal provision violates separation of powers does not end the analysis. The Court must then address the appropriate remedy, if any, for the unconstitutional removal provision. Plaintiff seeks remand for a new hearing and decision before an "untainted" ALJ. ECF No. 14 at 14. But to obtain such relief, Plaintiff must demonstrate that the unconstitutional provision deprived the Commissioner of the authority to issue a decision on Plaintiff's claim and that she suffered compensable harm as a result of the unconstitutional removal provision.

### 2. The unconstitutional removal provision did not deprive the Commissioner of the authority to delegate and resolve Plaintiff's claim and as such does not void the final SSA decision.

First, the removal provision is severable. In Seila Law, the Court found that the constitutionally defective removal procedure was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the offending removal restriction was erased. 140 S. Ct. at 2207-09. In other words, the Supreme Court held that the agency could continue to exist and

operate notwithstanding the removal provision. Id. Similarly, if the removal clause in §
902(a)(3) is severed, the SSA remains fully functional and operational.

Second, the removal provision does not render the Commissioner's appointment
invalid, and thus does not automatically void the SSA's actions under the
Commissioner. In Collins, the Supreme Court found the defective removal procedure
did not render the FHFA's actions void from the outset. See 141 S. Ct. at 1787
("Although the statute unconstitutionally limited the President's authority to remove the
confirmed Directors, there was no constitutional defect in the statutorily prescribed
method of appointment to that office. As a result, there is no reason to regard any of the
actions taken by the FHFA as void.").

The same is true here. The removal provision of § 902(a)(3) does not render
Commissioner Saul's appointment invalid or the ALJ or Appeals Council appointments
invalid, which in turn does not render the final Appeals Council decision void. As in
Collins, Plaintiff based his constitutional challenge only on the relevant removal
restriction, not on the propriety of the Commissioner's and other adjudicators'
appointments.[9] Unlike Appointments Clause cases, where courts have found the very
authority under which a government official has acted unconstitutional, the
unconstitutional removal provision at issue here did not impact then-Commissioner
Saul's ability to carry out the duties of his office. Plaintiff's insistence that the Supreme
Court's decision in Lucia v. S.E.C., 138 S. Ct. 2044 (2018), mandates a new hearing
before a new ALJ is incorrect. See Collins, 141 S. Ct. at 1788 (distinguishing Lucia's
remedy for appointments violations with the remedy for unconstitutional removal

---

[9] Plaintiff's reply brief states: "This appeal is not an Appointments Clause challenge," and "Plaintiff does
not challenge the adjudicators' appointments." See ECF No. 19 at 10.

restrictions). Plaintiff's argument–that all actions taken by the Commissioner (and his appointed officials) are void due to the unconstitutional removal provision–is expressly rejected by Collins.

In sum, Plaintiff has failed to show that Commissioner Saul was unconstitutionally appointed or otherwise lacked the ability to delegate decision-making authority to the ALJ and Appeals Council who considered Plaintiff's case. Settled precedent confirms that the "unlawfulness of the removal provision does not strip the Director of the power to undertake the responsibilities of his office." Collins, 141 S. Ct. at 1788, n.23. Hereto, there is no basis for concluding that Commissioner Saul "lacked the authority to carry out the functions of the office." See id. at 1788. This Court finds that the unconstitutional removal procedure did not deprive the Commissioner of the authority to delegate and resolve Plaintiff's claim nor does it void agency action.[10]

### 3. Plaintiff cannot establish compensable harm.

Under Collins, a plaintiff seeking relief on the basis of an unconstitutional removal provision must show that the restriction caused the plaintiff "compensable harm" in order to obtain remand for a new administrative adjudication. 141 S. Ct. at 1788–89.

Neither the Supreme Court nor the Fourth Circuit have explicitly outlined how a plaintiff may demonstrate that she was harmed by an unconstitutional removal provision. The Collins majority left it to the lower court on remand to first resolve this question. 141 S. Ct. at 1789. After Collins, relief on these grounds has been

---

[10] Many district courts have held the same. See Kristine A., v. Commissioner of Social Security, 2021 WL 5918128, at *6-7 (W.D. Wash. Dec. 15, 2021); Nathanial H. v. Kijakazi, 2021 WL 5921377, at *4-5 (D. Or. Dec. 15, 2021); Sarah H. v. Comm'r of Soc. Sec., 2021 WL 5770269, at *4 (W.D. Wash. Dec. 6, 2021); Shaun A. v. Comm'r of Soc. Sec., 2021 WL 5446878, at *4-5 (W.D. Wash. Nov. 22, 2021); Michele T. v. Comm'r of Soc. Sec., 2021 WL 5356721, at *4 (W.D. Wash. Nov. 17, 2021); John R. v. Comm'r of Soc. Sec., 2021 WL 5356719, at *6–7 (W.D. Wash. Nov. 16, 2021).

compellingly denied at the district court level via findings that social security claimants have not suffered compensable harm as a result of the unconstitutional removal provision.[11] The facts in the instant case present no exception.

While falling short of describing an explicit standard for establishing compensable harm in the context of unconstitutional removal provisions, Collins offers examples of how the requisite harm might be shown. The Supreme Court wrote that a plaintiff would be harmed by an unconstitutional removal provision where the President "had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way" or where "a President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal." Collins, 141 S. Ct. at 1789. As explained by Justice Kagan in her concurrence, this type of constitutional violation is unlikely to lead to relief in the lion's share of social security appeals—which would not concern the President at all—because, "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference." Collins, 141 S.Ct. at 1802 (Kagan, J. concurring).

Plaintiff has not put forward any showing that former President Trump, who nominated Commissioner Saul, would have removed him from office but for this removal provision, and appointed a new Commissioner who would have administered

---

[11] See Campbell, v. Comm'r of Soc. Sec., 2022 WL 34677, at *4 (D. Ariz. Jan. 4, 2022); Crossley, v. Kijakazi, 2021 WL 6197783, at *7 (M.D. Pa. Dec. 31, 2021); Kristine A., 2021 WL 5918128, at *6-8; Nathanial H., 2021 WL 5921377, at *4-6; Clark v. Kijakazi, 2021 WL 5905942, at *4 (E.D. Wis. Dec. 14, 2021); Osborne v. Kijakazi, 2021 WL 5890668, at *4 (W.D.N.C. Dec. 13, 2021); Brand v. Kijakazi, 2021 WL 5868131, at *6-7 (D. Nev. Dec. 10, 2021); Hutchens v. Kijakazi, 2021 WL 5834409, at *11-13 (M.D.N.C. Dec. 9, 2021); Sarah H., 2021 WL 5770269, at *5; Shaun A., 2021 WL 5446878, at *5-6; Shannon R. v. Comm'r of Soc. Sec., 2021 WL 5371394, at *8-9 (W.D. Wash. Nov. 18, 2021); Michele T., 2021 WL 5356721, at *5; John R., 2021 WL 5356719, at *7-8; Borger v. Kijakazi, 2021 WL 5023141, at *3 (W.D.N.C. Oct. 28, 2021); Robinson v. Kijakazi, 2021 WL 4998397, at *2-3 (W.D.N.C. Oct. 27, 2021).

this Plaintiff's claims differently. Nor has Plaintiff demonstrated how former President Trump's supposed inability to remove the Commissioner without cause might possibly have affected any disability benefits decision, much less the Plaintiff's specific claim. Accordingly, because there is no evidence that the former president sought to remove Commissioner Saul, there is no causal connection between § 902(a)(3)'s removal clause and Plaintiff's denial of social security benefits.

Plaintiff cites to President Biden's statement that Commissioner Saul had undermined and politicized Social Security disability benefits, reduced due process protections for benefits appeals hearings, and had taken other actions contrary to the mission of the agency. ECF No. 19 at 14-15. Given the final Appeals Council decision was published on September 25, 2020, when former President Trump was still in office, it is frankly irrelevant in this separation of powers argument what President Biden thought of Commissioner Saul considering Plaintiff's case before the SSA concluded four months before President Biden assumed office. The inquiry is whether former President Trump would have removed Commissioner Saul but for the removal clause.

In Collins, the Director of the FHFA adopted an amendment (the "Third Amendment") to certain financial agreements that "materially changed the nature of the agreements" and resulted in the companies in which the plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior form of the agreements. 141 S.Ct. at 1774. The plaintiffs in Collins thus had an identifiable basis to contend that[,] but for the unconstitutional removal provision, the President may have removed and appointed a

different Director who would have disapproved of the adoption (or implementation) of the Third Amendment. See id. at 1789.

In contrast, there is nothing showing the Commissioner or the SSA implemented new and relevant agency action that may have turned upon the President's inability to remove the Commissioner. Plaintiff has not identified any new regulations, agency policies or directives Commissioner Saul installed that may have directly affected her claims. Nor can Plaintiff even point to an awareness of the former President as to the Appeals Council decision in her case. Plaintiff thus fails to show how or why § 902(a)(3)'s removal clause possibly harmed her.

Plaintiff argues that she suffered the following injuries: (1) deprivation of her right to a constitutional hearing and adjudication before an ALJ, (2) deprivation of her right to a constitutional decision from an ALJ, (3) an unfavorable decision from a constitutionally illicit ALJ adjudication process, (4) deprivation of her right to a constitutionally valid adjudication process from the Appeals Council, (5) deprivation of her right to a constitutionally valid determination by the Appeals Council, and (6) that she received a partially adverse determination from this constitutionally illicit Appeals Council adjudication process. ECF No. 19 at 8-9. But, as explained above, the unconstitutional nature of the removal restriction in § 902(a)(3) did not automatically invalidate the actions taken by the Commissioner or the SSA during the Commissioner's tenure.

Furthermore, each district court case that Plaintiff relies on to demonstrate injury/harm addressed the much less onerous issue of whether the plaintiff had *standing* to assert his or her Seila Law/Collins-based claim and did not reach the merits of the matter. See Sylvia v. Kijakazi, 2021 WL 4692293, at *3-4 (N.D. Tex. Sep. 13, 2021)

("The [c]ourt finds that [the p]laintiff's separation-of-powers claim is both traceable and redressable such that she has standing to pursue it. Thus, all of [the p]laintiff's claims should proceed to briefing on the merits."); Albert v. Kijakazi, 2021 WL 3424268, at *3-5 (D. Alaska Aug. 5, 2021) ("Because [the] plaintiff has standing to bring his constitutional claim, [the Commissioner]'s motion to dismiss is denied."); Tafoya v. Kijakazi, 2021 WL 3269640, at *3 (D. Colo. July 29, 2021) ("While ultimately, the righteousness *vel non* of [the plaintiff's] arguments on the merits may gain [her] little, if anything, the question presently before [court] is one of standing, and thus does not implicate the merits."); Dante v. Saul, 2021 WL 2936576, at *10 (D.N.M. July 13, 2021) ("the Court finds that Plaintiff's constitutional claim is both traceable and redressable and may be considered on its merits").

But, as the Supreme Court recognized in Collins, causation for purposes of standing and causation for purposes of the scope of remedy are separate inquires. Indeed, in Collins, the Court found that the plaintiff had standing but remanded to the lower court for a determination as to whether the unconstitutional removal provision inflicted compensable harm. 141 S.Ct. at 1779, 1789; see also id. at 1787 n.24 ("What we said about standing in Seila Law should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional provision. We held that a plaintiff that challenges a statutory restriction on the President's power to remove an executive officer can establish standing by showing that it was harmed by an action taken by such an officer and that the plaintiff alleges was void.... But that holding does not mean that actions taken by such an officer are void *ab initio* and must be undone.").

27

Similarly, in <u>Tafoya</u>, the district court observed that, despite the plaintiff's allegation that the actions of the ALJs were void, which the court was obligated to accept as true for purposes of standing, under the Supreme Court's reasoning in <u>Collins</u>, it "may be well that, even if the removal provisions of the Social Security Act are unconstitutional, the agency's ALJs still had authority to issue disability determinations." 2021 WL 3269640 at *3 n.6. And indeed, that is exactly what this Court concluded above.

Simply put, the cases decided in the standing context that Plaintiff relies on do not provide any basis for the Court to find actual harm to Plaintiff arising from § 902(a)(3)'s removal provision. Plaintiff has not shown — and cannot show — that the removal clause in § 902(a)(3) inflicted harm. Thus, although the removal restriction in § 902(a)(3) violates the separation of powers, it does not independently require the Court to remand the Appeals Council's decision in this case.

## VI.   RECOMMENDATION

For the reasons herein stated, I find that the Commissioner's decision denying Plaintiff's claim for disability insurance benefits contains no legal error and is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No. 13] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 17] be **GRANTED**, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections

28

should also be submitted to the Honorable Thomas S. Kleeh, United States District Judge. **Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED:** January 14, 2022

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE